ARCHIBALD DOUGLAS RUSSELL, Respondent, *v.* FRANK GATES PORTER, Sometimes Otherwise Known as F. GATES PORTER, Appellant.

*Arrest — action for fraud — motion to vacate order on ground of insufficiency of papers denied.*

Appeal from an order of the Supreme Court, made at the New York Special Term and entered in the New York county clerk's office April 28, 1922, denying the defendant's motion to vacate an order of arrest granted *ex parte,* upon the ground that the papers upon which it was founded were insufficient in law to authorize it.

Order affirmed, with ten dollars costs and disbursements. No opinion. Present — Clarke, P. J., Dowling, Page, Greenbaum and Finch, JJ.; Clarke, P. J., and Greenbaum, J., dissenting.

GREENBAUM, J. (dissenting): The order of arrest was granted upon the complaint and plaintiff's affidavit. The complaint alleges a cause of action in fraud in that defendant shortly prior to February 4, 1920, induced plaintiff to buy 210 shares of stock of the Gallaudet Aircraft Corporation at $100 per share upon the alleged false and fraudulent representations that the corporation was doing a profitable business; that it had paid yearly dividends amounting to $10 per share, regularly on its common stock with the exception of the dividend due the preceding July; that the value of such common stock was in excess of $100 per share. It is also alleged that since May 4, 1921, plaintiff " discovered that at the time of the aforesaid representations the said Gallaudet Aircraft Corporation was doing practically no profitable business; that its assets were not in excess of its liabilities; that no dividends had ever been paid either on its preferred or common stock; that the common stock of said corporation was substantially of no value." Plaintiff's affidavit practically reiterates the allegations of the complaint and adds the following: " My suspicions as to Porter's good faith having been aroused I consulted my attorneys, Messrs. Choate, Larocque & Mitchell, during the latter part of October and they ascertained for me that the Gallaudet Aircraft Corporation had never paid any dividends and that 100 shares of the common stock and 100 shares of the preferred stock had been sold at public auction in the City of New York a short time prior to the date that Porter sold me 210 shares for the aggregate amount of $125." There is nothing in the affidavit which indicates whence the attorneys of the plaintiff derived their information, nor is any reason given why the persons from whom the attorneys ascertained the matters referred to did not make affidavits in respect to those matters. The papers upon which the order of arrest was granted were insufficient. The Special Term, however, upon the argument granted plaintiff leave to file supplementary affidavits in support of the order of arrest and plaintiff availed himself of such leave. The question thus arises whether the insufficiency of the original papers deprived the court of the power to permit service of additional affidavits to supply the insufficiencies and deficiencies of the papers upon which the order of arrest was granted. There were numerous decisions before the enactment of the Civil Practice Act which construed section 768 of the Code of Civil Procedure, which in part provided: " Upon the hearing of a motion relief shall not be denied to any party because of defects or insufficiencies in the moving papers which can be cured upon the hearing or before the entry of the order thereon,

but the court or judge shall direct that such defects or insufficiencies be cured or supplied forthwith, and shall proceed to hear and consider the motion, or may direct the motion to stand over to be heard at a subsequent time or place." One of the comparatively recent decisions which considered section 768 is *Dexter & Carpenter, Inc.,* v. *Lake & Export C. Corp.* (196 App. Div. 766). It will serve no useful purpose to discuss the varying and contradictory decisions of the courts as to the meaning of the section just quoted. We are now confronted with the liberal provisions of the Civil Practice Act applicable to provisional remedies where the original papers are insufficient. That act contains two sections which were not in the Code of Civil Procedure. The first is section 105 which reads as follows: "At any stage of any action, special proceeding or appeal, a mistake, omission, irregularity or defect may be corrected or supplied, as the case may be, in the discretion of the court, with or without terms, or, if a substantial right of any party shall not be thereby prejudiced, such mistake, omission, irregularity or defect must be disregarded." It is to be noted that that section applies generally to all actions, special proceedings and appeals. The other is section 822 which it is to be observed has special reference to the provisional remedies of arrest, injunction and attachment, and reads as follows: " If the application to vacate be without notice, it shall be founded and heard only on the papers on which the order or warrant was granted. If the application to vacate be to the court or a judge thereof, upon notice, the provisions of this act shall not prevent the court or judge, in furtherance of justice, *from allowing new proof, in behalf of the party opposing the application, to supersede or supply defects in the original proof, though the application to vacate be founded only on the papers on which the order or warrant was granted.* Nothing contained in this act shall prevent the court, by order granted on motion, from directing that the order or warrant and recitals therein be amended to conform to the proof. The court or a judge thereof to which or to whom an application to vacate the order or warrant is made upon notice, may permit such an amendment without notice, by a direction in the order determining the application." (Italics ours.) The intention of the lawmakers in enacting the section of the Civil Practice Act just quoted manifestly was to overcome the strict or narrow interpretations of section 768 of the Code, some of them going to the length that the insufficiency of the original affidavits ousted the court of jurisdiction and hence that the court could not receive additional affidavits to uphold an unauthorized order of arrest. The new enactments in the Civil Practice Act make it clear that the court is vested with a broad discretion in the furtherance of justice to accord an opportunity to the suitor who has procured an order of arrest or attachment or injunction upon defective papers or insufficient proof to supplement the original papers by additional proof. We are of opinion that the court acted within the exercise of its discretion in permitting the filing of additional affidavits in support of the order of arrest. It is, therefore, incumbent upon us to examine plaintiff's additional affidavits in connection with the counter affidavits filed by the defendant so that we may determine upon all the papers before us whether the order of arrest should be upheld. The affidavits sufficiently show that there had been no dividends paid on the shares of stock in question; that on November 26, 1919, 100 shares of the preferred stock and 100 shares of the common stock

of the Gallaudet Aircraft Corporation were sold at public auction at the auction rooms of Adrian H. Muller on Vesey street for the aggregate sum of $125, and that on December 15, 1920, at the same auction rooms there were sold 40 shares of preferred stock for $10, i. e., twenty-five cents per share, and 50 shares of the common stock for $14, i. e., twenty-eight cents per share; and finally that one of the affiants was told by a Mr. Lebherz, who was the treasurer of the Gallaudet Aircraft Corporation, that the company was financially embarrassed. No affidavit, however, was submitted by Mr. Lebherz showing upon what facts he bases the statement that the company was financially embarrassed, nor does it appear when this financial embarrassment existed. The defendant in his answering affidavit admits that the Gallaudet Aircraft Corporation had never paid any dividends but denies that at or before the time the plaintiff bought the shares in question he made any representations that the stock had paid dividends. Defendant in his affidavit also avers that the stock was never traded in on any market or over the counter and he refers to a written by-law introduced by the president of the corporation, one J. K. Robinson, Jr., to the effect " that no stock of this corporation, either preferred or common, should be listed in any exchange or curb for a period of three years from the time of the organization of the company," and that " the stock was not to be a speculative venture but purely an investment." With reference to the sales made by Adrian H. Muller & Sons, auctioneers, defendant alleges that the stock in question was sold by one K. for the purpose of establishing a loss for income tax purposes and the stock was bought in by a clerk of his named Simpson; that " this information was given to deponent by Mr. K. himself," and defendant also alleges that he voted as proxy for K., the actual owner of the stock, at the annual meeting of 1921, directly after the auction sales referred to took place and that he conferred with him in reference to the manner in which he was to vote on that occasion. And he further alleges that no information was given at that time that the stock was to be offered at auction, and that the transaction took place without the knowledge of any of the stockholders of the corporation. He also alleges that among the directors and stockholders of the corporation were men of " national reputation and undoubted integrity, of whom the following are a few: W. A. Harriman, Chairman of the Board of American Shipping and Commerce and vice-president of the Union Pacific Railroad Co.; F. F. Brewster, former director of N. Y., N. H. & H. R. R.; G. W. Pynchon, broker and member of the New York Stock Exchange; S. E. Munoz, President of the Federal Export Corporation; Alfred McEwen, President of the Ox Fiber Brush Co.; Paul McEwen, director of the Ox Fiber Brush Co.; Walter Campe, Jr., Vice-president of the American Shipping Commerce; Nicholas F. Brady of the Consolidated Gas Co.; Percy Rockefeller of the Standard Oil Co.; Alex H. Cochrane of the Smith Carpet Co., Yonkers; Harry Payne Whitney; Robert K. Cassatt, banker, Philadelphia; W. E. Rice, formerly President of Federal Steel Co.; J. L. Kemmerer, Director of Chase National Bank; Estate of William P. Eno; Estate of General Brayton Ives." Defendant also avers that Messrs. Brady, Cochrane, Whitney and the estate of Brayton Ives and the estate of William R. Eno and who were purchasers of the stock and are still holders thereof paid identically the same price for the stock as Mr. Russell paid. A detailed statement is also submitted of the condition of the Gallaudet Aircraft Corporation for the year 1921, which it is alleged was obtained from the president of the corporation, showing total assets of upwards

of $858,000 and total liabilities of more than $283,000, and showing net assets of $575,066.20. It is also alleged that the company is a going concern and made a profit during the year of 1921; that it is the owner of a great many valuable basic aeroplane patents obtained, designed and patented by Edson F. Gallaudet, who " at one time was instructor of physics at Yale University and is very highly regarded by the United States Navy, having formerly invented the torpedo dispeller, which is now used on the United States Battleships," etc.; that it is the owner of a large strip of valuable property known as Chepiwanexet Island at which the factory of the company is located. It is also alleged in the affidavit of the defendant that at the annual meeting of the corporation held in January, 1920, the president of the corporation, Mr. Robinson, in his annual report stated: " We start 1920 with about $750,000 worth of business in sight and we are convinced that the feather board business can be counted on for $400,000 in orders this year." There is, however, an allegation in the original affidavit made by the plaintiff to which we will now refer, which was not denied, nor explained in the affidavit of the defendant. That allegation is substantially as follows: That on or about September 15, 1921, the defendant called him up at his office and told him that if he would call upon him on the following Monday he would give him a check for $1,000, representing a dividend declared on the Gallaudet stock; that he thereafter received a check for $1,000 and deposited it in his bank and that he subsequently received notice that the " check was no good and had been returned to them stamped ' insufficient funds,' " etc. There is, however, an allegation in defendant's answering affidavit as follows: "About October, 1921, the plaintiff came to my office and asked me about the payment of dividends on the shares of stock held by him. Deponent was very busy at the time and requested the plaintiff to put down in writing what he wished to know. He did write down on a piece of paper the following statement with respect to the stock: ' I took it over in January or February, 1920; find out and let me know what it paid when I took it over on above mentioned date.' Deponent called in Mr. Charles S. Manges, who was in another office and in plaintiff's presence deponent said to Mr. Manges as follows: ' Mr. Russell wants me to sign this paper stating that the company pays 10% dividends. In your presence I state to him that the company has never paid 10% dividends on its common stock.' " It is also alleged that plaintiff then stated that he had always realized ten per cent on his investments and would like to get the same return from the Gallaudet Company. A supporting affidavit on the part of Mr. Manges is filed confirmatory of that portion of the defendant's affidavit just quoted. It is, however, to be borne in mind that the matters just referred to took place in September and October, 1921, about eighteen months after the plaintiff had purchased the stock in question, thus having only a remote bearing upon the alleged fraudulent acts of defendant. It seems to us that upon the papers the order of arrest should have been vacated. The order appealed from should be reversed, with ten dollars costs and disbursements, and the motion to vacate and set aside the order of arrest granted, with ten dollars costs. Clarke, **P. J.**, concurs.